IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LYNN FELDMAN, as Chapter 7 Trustee of the Estate of Image Masters, Inc., et al., : Plaintiff, : v. : ABN AMBRO MORTGAGE GROUP, INC., et al., : Defendants. | NO. 19-mc-131 Bankruptcy No. 07-21587 Adversary Nos. 09-2092 & 09-2143 Administratively and Substantively Consolidated |

Goldberg, J.                                                       February 10, 2020

**MEMORANDUM**

This case involves a Ponzi scheme perpetrated by Wesley Snyder through his company Image Masters, Inc. ("Image Masters"). When the scheme collapsed, Image Masters filed for bankruptcy under Chapter 7 of the Bankruptcy Code. On March 26, 2009, Lynn E. Feldman, the Chapter 7 Trustee for the estates of Image Masters and related entities (collectively, the "Debtors"), commenced two adversary proceedings in the United States Bankruptcy Court seeking to avoid and recover allegedly fraudulent transfers made to multiple lenders, including Defendants Countrywide Home Loans, Inc., CitiMortgage, Inc., SunTrust Bank, Wells Fargo Bank, N.A., Wells Fargo Home Mortgage, Federal National Mortgage Association, and Federal Home Loan Mortgage Corporation (collectively, "Defendants").

Defendants now move to withdraw of the referral of the adversary proceedings to the Bankruptcy Court pursuant to 28 U.S.C. § 157(d). For the following reasons, I will deny the Motion.

1

I.   **FACTUAL BACKGROUND**

The underlying factual history of this case is complex. As summarized in my prior opinion of August 18, 2014:

> Snyder initiated the fraud by inducing homeowners to enter into new home mortgages for more than the amount owed on their existing mortgages, with the proceeds from the new mortgage being used to pay off the existing mortgage. Snyder then convinced the homeowners to turn over the extra, "wrap" amount from the new mortgages to Image Masters, telling the homeowners that the wrap amounts would either be used to pay down the new mortgage or invested on their behalf. The homeowners were then persuaded to sign new mortgages in favor of Image Masters for the same amount, but at a lower interest rate than their new conventional mortgages. Pursuant to the Image Masters mortgages, the homeowners made payments to Image Masters, while Image Masters assumed responsibility for paying the homeowners' conventional mortgages. However, Image Masters had no contractual relationship with the mortgage companies/lenders obligating Image Masters to make payments on the homeowners' behalf. In reality, the wrap amounts were not used to pay down the new mortgages, nor were any profits earned on the money. Instead, Snyder used the wrap amounts to pay down preexisting homeowners' mortgages. The fraud was uncovered when Snyder was unable to generate enough funds to keep the mortgages current. In November 2007, Snyder was charged criminally with fraud and related offenses, and subsequently convicted and sentenced to a substantial period of incarceration.

Feldman v. ABN AMRO Mortg. Grp., Inc., 515 B.R. 443, 444–45 (E.D. Pa. 2014).

On September 18, 2007, prior to the filing of the criminal charges, the Debtors sought relief under Chapter 7 of the Bankruptcy Code. Trustee Lynn E. Feldman (the "Trustee") then initiated two adversary proceedings in the Bankruptcy Court against the lenders/banks who issued the homeowners their new mortgages. On December 17, 2009, the Bankruptcy Court dismissed both actions as failing to state a claim for either actual or constructive fraud and found that the homeowners were necessary parties under Federal Rule of Civil Procedure 19. Following an appeal to the district court, I issued an opinion affirming the Bankruptcy Court's dismissal of the

2

constructive fraud counts, but vacating and remanding the ruling as to the actual fraud count. Image Masters, Inc. v. Chase Home Finance, 489 B.R. 375 (E.D. Pa. 2013).

On July 31, 2013, the Trustee moved, under 28 U.S.C. § 157(d), to withdraw the reference of adversary proceedings to the Bankruptcy Court, arguing that withdrawal was mandatory due to her demand for a jury trial, her refusal to consent to a jury trial in Bankruptcy Court, and the Bankruptcy Court's lack of authority to enter final judgment on her fraudulent transfer claims. The Trustee also contended that I should exercise my discretion to withdraw the reference "for cause shown." I found that the Trustee had failed to establish either grounds for mandatory withdrawal or that withdrawal should be withdrawn "for cause shown." Feldman, 515 B.R. at 452–54.

Over the next four-plus years, the case proceeded in the Bankruptcy Court. The complaint was amended three times, lengthy fact discovery ensued, and the parties completed expert discovery. On June 21, 2018, the remaining defendants filed motions for summary judgment on all of the Trustees claims. Briefing on those motions was completed on July 15, 2019.

In the interim, on May 31, 2019, the long-presiding bankruptcy judge, Richard E. Fehling, announced his retirement from the Bankruptcy Court, and the case was reassigned to Chief Bankruptcy Judge Magdeline D. Coleman. Due to the reassignment of a new judge, Defendants filed the instant Motion to Withdraw the Reference to the bankruptcy court on June 14, 2019. The Trustee declined to join in the Motion and has taken no position on its merits.

## II.    LEGAL DISCUSSION

The district court has original, but not exclusive, jurisdiction over all bankruptcy proceedings. 28 U.S.C. § 1334(b). The bankruptcy court may exercise jurisdiction under a standing order of reference, as provided by 28 U.S.C. § 157(a). Once a proceeding has been referred to the bankruptcy court, the district court's authority to withdraw the reference is governed by 28 U.S.C. § 157, which provides for both mandatory and permissive withdrawal:

3

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both Title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d). Withdrawal from the bankruptcy court is mandatory where the district court determines that resolution of the proceedings requires consideration of both Title 11 and other federal laws. Withdrawal from the bankruptcy court is permissive under the statute "for cause shown." Id.; see also In re Am. Capital Equip., LLC, 324 B.R. 570, 572–73 (W.D. Pa. 2005).

"The 'cause shown' requirement in section 157(d) creates a presumption that Congress intended to have bankruptcy proceedings adjudicated in bankruptcy court unless rebutted by a contravening policy." Hatzel v. Buehler, Inc. v. Cent. Hudson Gas & Elec. Corp., 106 B.R. 367, 371 (D. Del. 1989) (internal quotations omitted). To overcome the presumption, the moving party bears the burden of proving that cause exists to withdraw the reference. In re LTC Holdings, Inc., Civ. A. No. 18-1987, 2019 WL 4643801, at *4 (D. Del. 2019); see also In re Earth Pride Organics, LLC, 602 B.R. 1 (E.D. Pa. 2019) ("The party seeking the withdrawal of the reference has the burden of going forward to show the grounds for withdrawal and bears the ultimate risk of non-persuasion." (quotations omitted)). Generally, "cause" to withdraw the reference "will be present in only a narrow set of circumstances." In re AgFeed USA, LLC, 565 B.R. 556, 563 (D. Del. 2016) (quoting In re Pruitt, 910 F.2d 1160, 1171 (3d Cir. 1990)).

Acknowledging that the statute does not define "cause," the United States Court of Appeals for the Third Circuit, in In re Pruitt, enumerated a non-exhaustive list of five factors that a court should consider in determining whether cause exists to withdraw the reference: (1) promoting uniformity in bankruptcy administration; (2) reducing forum shopping and confusion; (3) fostering

4

the economical use of the debtors' and creditors' resources; (4) expediting the bankruptcy process; and (5) the timing of the request for withdrawal. 910 F.2d at 1168.

Two additional factors also come into play in the discretionary decision to allow withdrawal. First, courts should be guided by whether the parties have requested a jury trial, which may be held in the bankruptcy court only with the parties' consent. 28 U.S.C. § 157(e). "However, assertion of a Seventh Amendment right to a jury trial, coupled with a refusal to consent to such trial before the Bankruptcy Court, is not of itself sufficient cause for discretionary withdrawal." In re Am. Classic Voyages Co., 337 B.R. 509, 511 (D. Del. 2006). Second, courts should consider whether the action sought to be withdrawn is a "core" or "non-core" proceeding.[1] See 28 U.S.C. § 157(b)(1). Although bankruptcy courts can hear both core and non-core proceedings, the scope of their authority is different. In re Am. Capital Equip., LLC, 325 B.R. 372, 375 (W.D. Pa. 2005). For core matters, the bankruptcy court may issue final orders and judgments, whereas for non-core matters, the bankruptcy court must submit proposed findings of fact and conclusions of law to the district court for *de novo* review. 28 U.S.C. § 157(b)(1) & (c)(1).

Defendants here concede that withdrawal of the reference is not mandatory; rather they seek permissive withdrawal of the reference to the Bankruptcy Court on grounds of judicial efficiency. They couch the issue as whether "leaving the summary judgment motions in front of a newly assigned bankruptcy judge lacking relevant background knowledge concerning the case is preferable to withdrawing the reference so the motions are decided by the district judge who

---

[1] A proceeding is core if it invokes a substantive right provided by Title 11 or if it is a proceeding, that by its nature, could arise only in the context of a bankruptcy case. Halper v. Halper, 164 F.3d 830, 836 (3d Cir. 1999). "Non-core proceedings include the broader universe of all proceedings that are not core proceedings but are nevertheless 'related to' a bankruptcy case." Id. (citing 28 U.S.C. § 157(c)(1)). "[T]he test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." Pacor v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984) (emphasis omitted).

previously heard the appeal, and who would have to review any decision of the bankruptcy judge *de novo* in any event." (Defs.' Mot. to Withdraw 11.)

The parties agree that (a) the Trustee has asserted a Seventh Amendment right to a jury trial, and (b) the action sought to be withdrawn is a non-core proceeding. Given these concessions, the question of whether Defendants have established cause to withdraw the reference turns on an analysis of the five Pruitt factors. Considering each of these factors, I do not find that Defendants have established sufficient "cause" to overcome the presumption that Congress intended to have bankruptcy proceedings adjudicated in bankruptcy court.

### A. Promoting Uniformity in Bankruptcy Administration

Defendants argue that the first factor militates in favor of withdrawing the reference because the bankruptcy judge who presided over the case for twelve years has retired. They contend that "Judge Goldberg's considerable prior experience with the substantive issues raised in this litigation would go a long way toward ensuring uniform treatment of all issues and also would relieve the newly assigned bankruptcy judge of the heavy burden of learning this complex case from scratch." (Defs.' Mot. to Withdraw 7.)

I disagree. This case—involving both bankruptcy claims and an adversary action asserting fraudulent transfer claims—has been pending in the United States Bankruptcy Court since 2009. In that time, I have had two occasions on which to weigh in on this case. First, in March 2010, the Trustee appealed the dismissal of both actions to this Court and, on March 11, 2013, I entered a Memorandum Opinion and Order affirming the dismissal of the Trustee's constructive fraudulent transfer claims, but reversing the dismissal of her actual fraudulent transfer and preference claims. Second, in late 2013, after resolution of the appeal, the Trustee filed a motion to withdraw the reference and have the case moved to District Court. By way of a Memorandum Opinion dated August 2014, I denied that Motion—without discussing the substance of the case—noting in part

that conservation of resources weighed against withdrawing the reference, particularly given the very real possibility that the actions would be disposed of prior to reaching a jury.

Since August 2014, the case has proceeded entirely in the Bankruptcy Court with several amended complaints having been filed and multiple opinions being decided, all of which created substantive changes in the nature of the case including the joinder of additional parties. Summary judgment briefing began well over a year ago in June 2018, and was completed in July of 2019. In the interim, on May 31, 2019, presiding judge Richard Fehling retired, and Chief Judge Magdeline Coleman was assigned to the case. While Defendants are correct that, at this juncture, Judge Coleman will have to invest time to come up to speed in this matter, the same holds true for my involvement. Having not had the opportunity to engage in substantive consideration of this case for over five years, I maintain only a slightly greater familiarity with the matter. All things being equal, considerations of uniformity would suggest that this case continue in the same forum in which it has been pending for the past ten years and in which the related core bankruptcy claims are proceeding. See Earth Pride Organics, 602 B.R. at 15 (finding no economies where "[b]oth courts would 'have to get up to speed'" on the case).

### B.  Reducing Forum Shopping and Confusion

With respect to the second factor—discouraging forum shopping and confusion—Defendants contend that forum shopping is not a significant concern at this point. They allege that if there is a trial on these proceedings, it will occur in the district court, meaning that the reference will eventually have to be withdrawn. They go on to reason that "[w]here the only remaining matters are the pending summary judgment motions and a possible trial, withdrawing the reference now will not promote forum shopping." (Defs.' Mot. to Withdraw 7.)

While I will not presume that Defendants' Motion was motivated by forum shopping, I maintain a legitimate concern that withdrawal at this juncture could encourage future forum

shopping. See In re Portnoy, Misc. No. 17-038, 2017 WL 3141186, at *6 (E.D. Pa. July 24, 2017) (denying withdrawal of reference to discourage forum shopping in the future). Courts should employ withdrawal judiciously "in order to prevent it from becoming just another litigation tactic for parties eager to find a way out of bankruptcy court." 400 Walnut Assocs., L.P. v. 4th Walnut Assocs., L.P., Misc. No. 14-145, 2015 WL 390455, at *4 (E.D. Pa. Jan. 28, 2015) (quotations omitted).

The Trustee here properly initiated these adversary proceedings in Bankruptcy Court in 2009. When confronted with the 2013 motion to withdraw the reference, I found that all pretrial proceedings should be heard by the Bankruptcy Court even if a trial was to be held in district court. Nothing has changed in that regard other than the retirement of Judge Fehling and the assignment of Chief Judge Coleman. Allowing withdrawal of a reference to Bankruptcy Court based purely on a change in the presiding judge could encourage parties to forum shop in an effort to seek a more favorable decisionmaker on dispositive motions.

I also accord no weight to the fact that a jury trial may eventually need to occur in the district court. It is well established that, although a party may be entitled to a jury trial in district court, the "potential entitlement at some future date is not sufficient grounds to withdraw the reference at this time." In re Big V Holding Corp., Civ. A. No. 01-233, 2002 WL 1482392, at *5 (D. Del. 2002). Rather, "[w]ithdrawal of the reference based on the ground that a party is entitled to a jury trial should be deferred until the case is 'trial ready.'" Id. (citing In re Nw. Inst. of Psychiatry, Inc., 268 B.R. 79, 84 (E.D. Pa. 2001)). Stated differently, "[i]t would be premature to withdraw the reference to the bankruptcy court based upon the unfixed proposition that a jury trial may occur in the future." Id.

### C. Fostering the Economical Use of the Parties' Resources

Defendants urge that the third factor strongly favors withdrawal of the reference for two reasons. First, they posit that even if the remaining proceedings were left in bankruptcy court, the district court would need to review any summary judgment decision *de novo* because the claims at issue are non-core claims. See In re Affirmative Ins. Holdings, Inc., 565 B.R. 566, 581 (D. Del. 2017) ("Bankruptcy courts have 'full adjudicative power with regard to "core" proceedings, subject to appellate review by the district courts,' but must 'submit proposed findings of fact and conclusions of law to the district court' regarding 'non-core' proceedings."). Second, Defendants again contend that the newly-assigned bankruptcy judge does not have extensive experience with these matters, whereas I have already written substantively on this case.

As to Defendants' first argument, it is well settled that "[p]roceedings should not be withdrawn for the sole reason that they are non-core. The 'cause shown' requirement in section 157(d) creates a 'presumption that Congress intended to have bankruptcy proceedings adjudicated in bankruptcy court unless rebutted by a contravening policy.'" Hatzel & Buehler, Inc. v. Central Hudson Gas & Elec. Corp., 106 B.R. 367, 371 (D. Del. 1989) (quotations omitted). The recommendation process that Defendants now disparage as unwieldy "is the exact mechanism that 28 U.S.C. § 157(c)(1) . . . . contemplates and that has long been used by bankruptcy and district courts across the country." In re DBSI, Inc., 467 B.R. 767, 775 (D. Del. 2012). Thus, Defendants' "concerns about judicial economy were undoubtedly considered when § 157 was enacted." Id. "[T]he possibility that the parties may be required to litigate the matter twice, once before the Bankruptcy Court and once before the District Court on appeal, does not necessarily mean it is a more efficient use of the parties' resources to simply have the District Court decide a core proceeding every time, as this would frustrate the purpose of the reference to the Bankruptcy Court." In re GEO Specialty Chems., Inc., Civ. A. Nos. 16-8405, 8463, 2017 WL 66387, at *4 (D.N.J. Jan.

5, 2017); see also 400 Walnut Assocs., 2015 WL 390455, at *4 ("[W]ithdrawing the reference here would not effectively prevent an unnecessary duplication of effort . . . but rather would be a waste of the Bankruptcy Court's familiarity with the underlying facts and legal issues.").

Here, although the proceedings are non-core, there is no reason that the Bankruptcy Court cannot provide comprehensive recommendations on the motions for summary judgment. See In re Nortel Networks, Inc., 539 B.R. 704, 710 (D. Del. 2015) ("[E]ven for non-core claims for which a jury trial is requested, a bankruptcy court is capable of functioning in a role similar to that of a magistrate."). Indeed, I addressed this precise argument in my prior denial of the Trustee's motion to withdraw, noting that "[a]lthough we understand that it is possible that this Court will have to review recommendations on dispositive motions made by the bankruptcy court, we conclude that conservation of resources weighs against the Trustee's motion." Feldman, 515 B.R. at 452. That logic still holds true.

As to Defendants' second argument, I again give little weight to the presence of a new bankruptcy judge in this matter. The Bankruptcy Court, as an entity, has already expended invaluable time and energy considering and resolving the facts and issues of this case. While Judge Coleman just entered this case in May 2019, the nature of the claims at issue—consisting of allegations of fraudulent transfer—are inherently within the expertise of bankruptcy court judges. See In re Arbco Capital Mgmt., LLP, 479 B.R. 254, 267–68 (S.D.N.Y. 2012) (recognizing efficiencies to be gained from giving bankruptcy judge the first opportunity to review fraudulent transfer claims.). Ultimately, judicial economy will not necessarily be served withdrawing the reference here. See In re One-Eighty Invs., Ltd., 72 B.R. 35, 37–38 (N.D. Ill. 1987) (rejecting argument that judicial economy was served by withdrawal of reference when bankruptcy judge retired; district court had not had opportunity to consider case since previously denying objections

to bankruptcy court's order). Indeed, the parties' resources will be utilized most economically by continuing the case in the same forum that has managed it for the past decade.

### D. Expediting the Bankruptcy Process

Defendants offer very little analysis under this factor, except to argue that "declining to withdraw the reference would slow down, not expedite, resolution of the bankruptcy cases. Leaving this case in bankruptcy court would only create additional and duplicative steps on the path to resolving it." (Defs.' Mot. to Withdraw 8.) This cursory argument does little to meet Defendants' burden of proving that the reference to the Bankruptcy Court should be withdrawn. "[A]pplication of [Defendants'] logic would essentially result in permissive withdrawal of the reference in every bankruptcy case 'since all dispositive matters resolved by the bankruptcy court may be appealed to the district court.'" In re GEO Specialty Chems., Inc., Civ. A. Nos. 16-8405, 16-8463, 2017 WL 66387, at *4 (D.N.J. Jan. 5, 2017) (quoting In re U.S. Airways Grp., Inc., 296 B.R. 673, 683 (E.D. Va. 2003)).

As Defendants have offered no substantive analysis showing that withdrawing the reference will somehow expedite the bankruptcy process, I give no weight to this factor.

### E. Timing of the Request for Withdrawal

With respect to the fifth factor, timing of the request for withdrawal, Congress has mandated that a party seeking to withdraw a proceeding from a bankruptcy court to a district court can do so only upon the filing of a "timely" motion. 28 U.S.C. § 157(d). "A § 157(d) motion is timely if it is filed at the first reasonable opportunity after the movant has notice of the grounds for removal, taking into consideration the circumstances of the proceeding." In re Schlein, 188 B.R. 13, 14 (E.D. Pa. 1995). Timeliness is "measured by the stage of the proceedings in the Bankruptcy Court." In re U.S.A. Floral Prods., Inc., Civ. A. No. 05-00039, 2005 WL 3657096, at *1 (D. Del. July 1, 2005)

11

(internal quotation marks omitted). "The purpose of the timeliness provision is to prevent unnecessary delay and stalling tactics." Schlein, 188 B.R. at 15.

Defendants urge that their Motion for Withdrawal was timely filed after the retirement of Judge Fehling and the reassignment of Judge Coleman to the case. While I agree that Defendants acted expeditiously after Judge Fehling's retirement, Defendants' argument confirms that their Motion is premised entirely on the change of judges. Were Defendants truly concerned about the *de novo* review process on the summary judgment motions, they would have sought withdrawal of the reference well over a year ago, when dispositive motions were filed.

## III. CONCLUSION

The applicable test here is not a weighing of factors on a scale in equipoise, but rather a determination of whether Defendants can overcome a scale already heavily weighted against withdrawal. The moving parties bear the burden of (a) overcoming the presumption that "Congress intended to have bankruptcy proceedings adjudicated in bankruptcy court unless rebutted by a contravening policy," Hatzel, 106 B.R. at 371, and (b) establishing the "narrow set of circumstances" constituting "cause" to withdraw the reference. AgFeed, 565 B.R. at 563.

After consideration of all the pertinent factors, I find that Defendants have not demonstrated cause for withdrawal of the reference to the Bankruptcy Court at this juncture. Defendants' half-hearted argument that "all of the Pruitt factors favor (*or are at worst neutral to*) withdrawal of the reference," fails to meet the standard. (Defs.' Mot. to Withdraw 9 (emphasis added).) The fact that a new bankruptcy judge must now familiarize herself with these proceedings does not change the equation. I have no doubt that Judge Coleman is more than capable of applying her significant expertise, expediently understanding the relevant facts and legal issues, and providing sound resolution of the dispositive motions. Ultimately, permitting the bankruptcy court to issue rulings on the multiple pending dispositive motions, and withdrawing the reference only when the case is

ripe for a jury trial, promotes both judicial economy and a timely resolution of this case. Accordingly, I will deny the Motion for Withdrawal of Reference.